Case 1:18-cv-01113-RDB Document 21 Filed 06/25/18 Page 1 of 13

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

RANDSTAD PROFESSIONALS US, LLC,

Plaintiff,

v.

JOSEPH TAMBERRINO and VERITAS PARTNERS, LLC,

Defendants.

CASE NO. 1:18-cv-01113-RDB

**CONSENT ORDER FOR PERMANENT INJUNCTION**

On April 17, 2018, Plaintiff Randstad Professionals US, LLC filed its Complaint against Defendants Joseph Tamberrino ("Tamberrino") and Veritas Partners, LLC ("Veritas") (together, "Defendants"). Randstad alleges that in the course of leaving Randstad and establishing a competitive business, Veritas, along with non-parties Eric Howser ("Howser") and Bryan Watts ("Watts"), Tamberrino breached his duty of loyalty and fiduciary duty to Randstad, and that Defendants violated the Defend Trade Secrets Act of 2016 ("DTSA") and tortiously interfered with Howser's and Watts' restrictive covenants in their employment agreements with Randstad. This matter is now before the Court on the parties' Consent Order for Permanent Injunction as to Defendants Tamberrino and Veritas.

Defendants consent to the entry of this order and state that their consent is given knowingly and voluntarily and that they have had the opportunity to, and have in fact, consulted with their counsel prior to consenting to the relief described in this order.

Case 1:18-cv-01113-RDB Document 21 Filed 06/25/18 Page 2 of 13

**THE PARTIES AGREE AND THE COURT FINDS THAT:**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and 1367, and personal jurisdiction and venue over the parties in this action are also present.

2. Randstad and Defendants have stipulated and agreed to the entry of this permanent injunction order without a finding by the Court of law or fact other than stated below. Randstad stipulates that it will not seek to recover its attorneys' fees and costs solely as a result of the entry of this permanent injunction.

3. Howser is a former Randstad Executive Recruiter.

4. Watts is a former Randstad Executive Recruiter.

5. Tamberrino is a former Randstad National Director to whom Howser and Watts reported.

6. Randstad is an industry leader in the staffing industry, a highly competitive, specialized business built on customer relationships and decades of institutional knowledge and competitive intelligence.

7. Randstad has legitimate, protectable business interests in its relationships with its customers, Talent, and employees.

8. To enable its employees to perform their duties, Randstad provides employees, including Tamberrino, Howser, and Watts, with access to relevant Confidential Information and trade secrets, such as pricing, customer preferences and hiring needs, branch management, comprehensive financial data, and similar information or compilations of information that derives economic value because it is not generally known.

9. Randstad takes reasonable measures and precautions to protect its Confidential Information and trade secrets, because Randstad has expended substantial amounts of money, time, and effort in developing and maintaining such information.

10. Randstad has legitimate, protectable business interests in its Confidential Information and trade secrets.

11. Howser signed an employment agreement with Randstad on or about July 11, 2016.

12. Watts signed an employment agreement with Randstad on or about February 1, 2016.

13. Section 3 of Howser's and Watts' employment agreements describe their obligations to protect Randstad's Confidential Information and trade secrets. Specifically, Section 3 includes the following restrictions:

> (a) [Howser/Watts] acknowledges that Confidential Information and Trade Secrets are valuable, special and unique assets of the Company's business. In the course of [Howser's/Watts's] employment with the Company, the Company will disclose to Employee and grant Employee access to Confidential Information and Trade Secrets, and Employee desires to be, and will be, entrusted with such Confidential Information and Trade Secrets during employment by the Company. In consideration of the Company's entrusting to [Howser/Watts] certain of its Confidential Information and Trade Secrets, [Howser/Watts] shall not directly or indirectly reproduce, use, distribute, disclose, publish, or misappropriate any Confidential Information or Trade Secrets on behalf of [Howser/Watts] or any person or entity other than the Company for any purpose whatsoever (i) at any time during [Howser's/Watts's] employment with the Company, and (ii) after [Howser's/Watts's] separation from employment with the Company (for any reason) for so long as the information in question meets the definition of Confidential Information set forth in Section 2(b), up to a maximum of two (2) years from the date of such separation of employment; provided that as to any Confidential Information that constitutes a Trade Secret under applicable law, these restrictions shall apply for so long as the information remains a Trade Secret. [Howser/Watts] acknowledges that any such prohibited use or disclosure of Confidential Information or Trade Secrets is likely to

cause irreparable harm and financial loss to the Company.

14. Section 3 of Howser's and Watts' employment agreements is a valid and enforceable contractual expression of Randstad's legitimate business interests in protecting its Confidential Information and trade secrets.

15. Section 4 of Howser's and Watts' employment agreements contain restrictive covenants that limit their ability to compete with Randstad and to solicit Randstad's customers, Talent, and employees. Specifically, Section 4 includes the following restrictions:

> (a) During [Howser's/Watts's] employment with the Company and the eighteen (18) month period immediately following the date of [Howser's/Watts's] separation of employment with the Company, regardless of the reason for such separation, [Howser/Watts] shall not, directly or indirectly, on [Howser's/Watts's] own behalf or on behalf of any person or entity other than the Company:
>
> > (i) contact, solicit, service, sell to, or attempt to contact, solicit, service, or sell to any customer of the Company with whom [Howser/Watts] had Material Contact at any time during the twelve (12) months prior to the date of [Howser's/Watts's] separation of employment with the Company for the purpose of providing services competitive with the Business of the Company;
> >
> > (ii) contact, solicit, service, place, or attempt to contact, solicit, service, or place any Placement Candidate or Talent with whom [Howser/Watts] had Material Contact at any time during the twelve (12) months prior to the date of [Howser's/Watts's] separation of employment with the Company for the purpose of providing services competitive with the Business of the Company;
> >
> > (iii) contact, recruit, or solicit, or attempt to contact, recruit, or solicit any associate (internal) employee of the Company with whom [Howser/Watts] worked at any time during the twelve (12) months prior to the date of [Howser's/Watts's] separation of employment with the Company for the purpose of encouraging, enticing or causing such associate (internal) employee to terminate employment with the Company, or to accept employment with any person or entity that competes with the Business of the Company; or
> >
> > (iv) hire any associate (internal) employee of the Company with whom [Howser/Watts] worked at any time during the twelve (12) months prior to the date of Employee's separation of employment with the

Company for any person or entity that competes with the Business of the Company.

(b) During his or her period of employment with the Company, [Howser/Watts] shall not, directly or indirectly, engage in (or own more than a five (5) percent interest in any entity which engages in) activities or services competitive with the Business of the Company.

(c) During [Howser's/Watts's] employment with the Company and the twelve (12) month period immediately following the date of [Howser's/Watts's] separation of employment with the Company, regardless of the reason for such separation, [Howser/Watts] shall not, within the Restricted Territory, directly or indirectly, operate, control, or own any entity which engages in activities competitive with the Business of the Company (other than owning, as a passive investment, no more than a five (5) percent interest in any such entity).

(d) During [Howser's/Watts's] employment with the Company and the twelve (12) month period immediately following the date of [Howser's/Watts's] separation of employment with the Company, regardless of the reason for such separation, Employee shall not, within the Restricted Territory, directly or indirectly, on [Howser's/Watts's] own behalf or on behalf of any person or entity other than the Company, hold any position as an employee, agent, contractor, or otherwise, for or with any person or entity which engages in activities competitive with the Business of the Company if such position involves:

(i) providing products or services competitive with the Business of the Company;

(ii) supervising employees or other personnel who provide products or services competitive with the Business of the Company;

(iii) developing or implementing strategies or methodologies related to products or services competitive with the Business of the Company; or

(iv) engaging in responsibilities in which [Howser/Watts] would utilize or disclose Confidential Information.

16. Section 4 of Howser's and Watts' employment agreement is a valid and enforceable contractual expression of Randstad's legitimate business interests in protecting its Confidential Information and trade secrets, its relationships with customers, Talent, and employees, and its customer goodwill in the Baltimore, Maryland market.

Case 1:18-cv-01113-RDB Document 21 Filed 06/25/18 Page 6 of 13

17. Howser's and Watts' employment agreements define the "Restricted Territory" as follows:

> (i) a radius of twenty-five (25) miles of any office(s) to which Employee was assigned or which Employee managed, during the twelve (12) months prior to the date of Employee's separation of employment with the Company;
>
> (ii) a radius of twenty-five (25) miles of any office(s) in which Employee performed services on behalf of the Company at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company;
>
> (iii) a radius of twenty-five (25) miles of any office(s) in which the Company employed personnel whom Employee directly or indirectly supervised or managed during the twelve (12) months prior to the date of Employee's separation of employment with the Company; and
>
> (iv) any region or territory to which Employee was actually assigned or which Employee managed during the twelve (12) months prior to the date of Employee's separation of employment with the Company.

18. The restrictive covenants detailed in Section 4 of Howser's and Watts' employment agreements are reasonable in time, geographic area, and the scope of the prohibited activities. Defendants acknowledge that, in connection with their employment with Randstad, Tamberrino, Howser, and Watts customarily and regularly solicited, on Randstad's behalf, customers and prospective customers and made sales and performed services on Randstad's behalf.

19. While employed by Randstad, Tamberrino, Howser, and Watts worked out of Randstad's office located at 120 E. Baltimore Street, Suite 2220, Baltimore, Maryland 21202.

20. Prior to leaving Randstad, Tamberrino formed Veritas for the purposes of selling staffing services. Tamberrino registered Veritas with the Maryland Secretary of State on or about October 21, 2017.

21. Howser and Watts, as well as Susan Turk, another Randstad employee, agreed to join Tamberrino at Veritas prior to resigning from Randstad.

22. On January 3, 2018, Tamberrino, Howser, Watts, and Turk all resigned from Randstad. All four sent e-mails to the entire Baltimore office of Randstad announcing their departures on that date.

23. Since leaving Randstad, Tamberrino, Howser, and Watts have joined Veritas, a Randstad competitor that provides products or services competitive with the Business of the Company, and which has its principal place of business within the Restricted Area, at 16511 York Road, Monkton, Maryland.

24. Defendants agree that Randstad has entered into valid and enforceable agreements with Howser and Watts.

25. Defendants agree that all restrictive covenant provisions contained in Howser's and Watts' employment agreements are valid and enforceable expressions of Randstad's legitimate, protectable business interests.

26. Randstad asserts that is likely to prevail in its action against Defendants.

27. Randstad asserts that, but for the entry of a permanent injunction, it would suffer irreparable harm to its legitimate business interests, including accrued customer goodwill, the potential dissemination of Confidential Information and trade secrets, and the loss of customer relationships, all of which cannot be remedied through monetary damages.

28. Randstad asserts that the public and private interests favor entry of a permanent injunction.

29. Defendants agree that Randstad need not post security in any amount in connection with the entry of this order.

30. Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the parties waive the entry of any further findings of fact and conclusions of law for purposes of this order.

## I. DEFINITIONS

For purposes of this order, the following definitions apply:

31. . "Business of the Company" is defined as the services provided by Randstad, including but not limited to temporary, temporary to hire, direct hire and outsourced placement and staffing services, payrolling, recruitment process outsourcing, independent contractor assessment and placement, HR and management consulting, managed services, or other services that are the same as or substantially similar to the services Tamberrino, Watts, and Howser provided on behalf of Randstad between January 3, 2016 and January 3, 2018.

32. "Confidential Information" is defined as data and information belonging to Randstad (i) relating to the Business of the Company, (ii) which has been disclosed to Tamberrino, Howser, and Watts or of which Tamberrino, Howser, and Watts became aware as a consequence of or through Tamberrino, Howser, and Watts' relationship with Randstad, (iii) which has value to Randstad, and (iv) which is not generally known to the public or the Randstad's competitors. "Confidential Information" includes, but is not limited to, the Company's proprietary processes and methods of operation, pricing, margin and mark-up information, strategic plans, training techniques and manuals, recruitment and placement strategies and targets, financial data and projections, sales and marketing information, personnel information, information concerning Placement Candidates and Talent (such as employment preferences, salary requirements/history, contact information, availability, customer feedback and interpersonal skills), and information concerning actual or prospective customers (such as hiring preferences, staffing needs, hiring manager contact information, pricing and job orders).

"Confidential Information" does not include any data or information that has been voluntarily disclosed to the public by Randstad (except where such public disclosure has been made by Tamberrino, Howser, or Watts without authorization from Randstad), or that has been independently developed and disclosed by others, or that enters the public domain through lawful means.

33. "Customer" means any entity or business with which Randstad conducted business in the Restricted Territory between January 3, 2016 and January 3, 2018.

34. "Defendants" means and refers to Joseph Tamberrino and Veritas Partners, LLC.

35. "Excluded Customers" means and refers to the following: Bank of America; Capital Funding Group; Colombo Bank; Columbia Bank; Constellation (Exelon/BGE); Gordon Feinblatt; Hannon Armstrong; Harbor Bank; Howard Bank; Mariner Finance; Mid-Atlantic Farm Credit; Old Line Bank; Revere Bank; Rosedale Federal; SECU; Severn Bank; and SunTrust Bank.

36. "Placement Candidate" means (i) any person who was identified by Randstad for placement on an assignment with a customer as of the date of Tamberrino, Howser, and Watts' separation of employment with Randstad or (ii) any person who completed an assignment with Randstad between January 3, 2016 and January 3, 2018.

37. "Randstad" means and refers to Randstad Professionals US, LLC and its parents, subsidiaries, affiliates, shareholders, officers, directors, attorneys, insurers, successors, representatives, agents, employees, predecessors, and assigns.

38. "Restricted Territory" is defined as the 25-mile radius measured from 120 E. Baltimore Street, Suite 2220, Baltimore, Maryland 21202.

39. "Restricted Activity" is defined as any conduct described in Paragraph No. 15 of this order that occurs or facilitates the provision of staffing services within the Restricted Territory.

40. "Talent" means any employee who was placed by Randstad on an assignment with a customer as of January 3, 2018.

41. All other terms shall be interpreted according to their customary meaning and usage.

## II. SCOPE OF INJUNCTION

Based on the foregoing, it is therefore ordered that:

42. Tamberrino and Veritas, and all persons acting in the capacity of their agents, servants, employees, successors and assigns, and all persons acting in active concert or participation with Defendants who receive actual notice of such order, including, without limitation, Howser and Watts, are restrained, enjoined, and prohibited, until further order of the Court, from directly or indirectly:

a. reproducing, using, distributing, disclosing, publishing, or misappropriating any of Randstad's Confidential Information or Trade Secrets.

b. contacting, soliciting, servicing, selling to, accepting business from, doing business with, providing services to, or attempting to contact, solicit, service, sell to, accept business from, do business with, or provide services to any Customer of the Company, other than Excluded Customers for the purpose of providing services competitive with the Business of the Company. This restriction is in effect from the date of the entry of this order until April 17, 2019.

c. contacting, soliciting, servicing, placing, or attempting to contact, solicit, service, or place any Placement Candidate or Talent for the purpose of providing services competitive with the Business of the Company. This restriction is in effect from the date of the entry of this order until April 17, 2019.

d. contacting, recruiting, or soliciting, or attempting to contact, recruit, or solicit any associate (internal) employee of the Company for the purpose of encouraging, enticing or causing such associate (internal) employee to terminate employment with the Company, or to accept employment with any person or entity that competes with the

Business of the Company. This restriction is in effect from the date of the entry of this order until April 17, 2019.

e. hiring any associate (internal) employee of the Company for any person or entity that competes with the Business of the Company. This restriction is in effect from the date of the entry of this order until April 17, 2019.

## III. ADDITIONAL OBLIGATIONS AND STIPULATIONS

43. Tamberrino agrees to execute, no later than seven (7) days from the date of this order, an affidavit certifying that he and Veritas have not had any of Randstad's Confidential Information and/or trade secrets in their possession, custody, or control since January 3, 2018 or, alternatively, identifying such property and stating that they will not access, use, and/or disclose any such information for purposes unrelated to the resolution of this dispute, and that they will return and/or irretrievably destroy such information upon execution of said affidavit and provide a certification confirming that the same has occurred.

## IV. FORCE AND EFFECT

44. The injunctive provisions of this order shall be binding on Tamberrino and Veritas, upon any person insofar as he or she is acting in the capacity of an agent, servant, or employee of Tamberrino or Veritas, and upon any person with actual notice of this order to the extent that he or she is acting in active concert or participation with Tamberrino or Veritas, including, without limitation, Howser and Watts.

45. The injunctive restrictions described in each subsection of Section II shall remain in effect according to the temporal limitation detailed in each subsection.

46. The Court shall retain jurisdiction over this action to ensure compliance with this order and for all other purposes related to this action.

47. The parties are **DIRECTED** to file a joint stipulation of dismissal, with prejudice, no later than seven days after the entry of this Consent Preliminary Injunction.

Case 1:18-cv-01113-RDB Document 21 Filed 06/25/18 Page 12 of 13

ON BEHALF OF RANDSTAD PROFESSIONALS US, LLC

By: /s/ Renee B. Appel
Renee B. Appel
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, D.C. 20004
Telephone: (202) 463-2400
Facsimile: (202) 828-5393
rappel@seyfarth.com

*Attorneys for Plaintiff*

ON BEHALF OF JOSEPH TAMBERRINO, VERITAS PARTNERS, LLC, ERIC HOWSER, AND BRYAN WATTS

By: /s/ Andrew Dansicker
Andrew Dansicker
Law Office of Andrew M. Dansicker, LLC
Executive Plaza II, Suite 705
11350 McCormick Road
Hunt Valley, Maryland 21031
Telephone: (410) 771-5668
Facsimile: (443) 927-7390
adansicker@dansickerlaw.com

*Attorney for Defendants Joseph Tamberrino and Veritas Partners, LLC and non-parties Eric Howser and Bryan Watts*

*Of counsel:*

Erik W. Weibust (admitted *pro hac vice*)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, Massachusetts 02210
Telephone: 617-946-4800
Facsimile: 617-946-4801
eweibust@seyfarth.com

Alex Meier (admitted *pro hac vice*)
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia 30309
Telephone: (404) 885-6772
Facsimile: (404) 892-7056
ameier@seyfarth.com

SO ORDERED this 26th day of June 2018

By: [signature]
Hon. Richard D. Bennett
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| RANDSTAD PROFESSIONALS US, LLC,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH TAMBERRINO and VERITAS PARTNERS, LLC,<br><br>Defendants. | ) | CASE NO. 1:18-cv-01113-RDB |

## CERTIFICATE OF SERVICE

I certify that on June 25, 2018, I electronically filed this **CONSENT PERMANENT INJUNCTION** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

/s/ Renee B. Appel
Counsel for Plaintiff